IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:05-CR-00539-DCN-1 |
| vs. | ) | |
| | ) | |
| Tara Anderson Thompson, | ) | **ORDER & OPINION** |
| | ) | |
| Defendant/Movant. | ) | |
| _____ | ) | |

This matter is before the court for an evidentiary hearing on an issue raised in defendant Tara Anderson Thompson's motion to vacate, set aside, or correct her federal sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, defendant's motion is denied.

## I. BACKGROUND

Defendant was convicted after a jury trial of one count of conspiracy to launder money and to engage in monetary transactions in property derived from drug distribution, one count of engaging in a monetary transaction in criminally derived property, and one count of aiding and abetting the distribution of marijuana. The court sentenced defendant to sixty-three months of imprisonment. The Fourth Circuit affirmed defendant's convictions. Defendant then filed the instant motion to amend, correct or vacate her sentence under 28 U.S.C. § 2255. In her motion, defendant raised numerous issues, most of which involved claims of ineffective assistance of counsel. The government moved for summary judgment on all of defendant's claims. On July 14, 2009, the court granted summary judgment to the government on all of defendant's claims except one: whether a plea agreement was offered to defendant and whether defendant knew of the plea

1

agreement but elected to proceed to trial. The court held an evidentiary hearing on January 11, 2010, and that sole remaining issue is now ripe for resolution.

## II. DISCUSSION

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel guaranteed by the Sixth Amendment includes the right to the effective assistance of counsel. Strickland, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). In Strickland, the Supreme Court outlined counsel's responsibility to provide effective assistance and established a two-part test for determining whether counsel was ineffective. Counsel is ineffective if his efforts were objectively unreasonable as measured against prevailing professional norms *and* counsel's errors were prejudicial. Id. at 688-94. Prejudice exists if there is a reasonable probability that, but for counsel's deficient performance, the proceeding would have had a different result. Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id.

The Strickland Court explained that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The Court was particularly concerned with the temptation to evaluate the reasonableness of counsel's conduct using the benefit of hindsight, a problem that reviewing courts should make "every effort" to eliminate. See id. To correct the negative effects of after-the-fact second guessing, the Court instructed that there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  On the prejudice prong, a defendant must do more than show counsel's "errors had some conceivable effect on the outcome of the proceeding." Id. at 693.  Rather, as discussed above, the defendant has to present a reasonable probability of a different result absent counsel's deficiencies.

     A defense attorney should keep a defendant apprised of all developments in the plea negotiation process and communicate the prosecutor's proposals promptly.  Johnson v. Duckworth, 793 F.2d 898, 900-02 (7th Cir. 1986).  Erroneous advice during the plea negotiation process or the failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance.  See, e.g., Paters v. United States, 159 F.3d 1043, 1047-48 (7th Cir. 1998) (holding that when appellant alleged attorney gave him erroneous advice during plea negotiations regarding the maximum sentence if he proceeded to trial, hearing warranted in district court to determine if defendant would have accepted the plea); United States v. Blaylock, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (failing to inform defendant of plea offer was unreasonable assistance).  If a defendant can show that she would have accepted a plea offered by the government and that the sentence under the plea offer was less than the sentence ultimately imposed, she may be able to show prejudice.  See Paters, 159 F.3d at 1047; Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995) (holding defendant could not show prejudice arising out of misadvice of defense attorney when there was no showing defendant would have accepted offer).

Defendant was the first witness to testify (via telephone) at the evidentiary hearing. Defendant testified that during discussions with her trial counsel, Bill Runyon, she informed Mr. Runyon that she "would be happy to work out a plea." Tr. 4. There was some discussion between defendant and Mr. Runyon about trying to work out a plea to a lesser offense in the indictment. Tr. 4-5. Defendant would have considered any plea offer that would have resulted in a lower sentence than she ultimately received. Tr. 5-6. As a general matter, defendant, who was an experienced criminal defense lawyer, was aware that pleading guilty, as opposed to being found guilty after a trial, would probably have resulted in favorable treatment at sentencing. Tr. 6. Defendant and Mr. Runyon never discussed any particular amount of prison time she would be willing to consider serving in exchange for pleading guilty. Tr. 6.

Defendant testified that her appellate attorney, James Loggins, told her of an alleged plea offer that, according to defendant, Mr. Runyon had not relayed to her.[1] Tr. 8. According to defendant, she heard about this alleged offer for the first time during her appeal. Tr. 9. Had she known about the alleged offer, defendant would "have considered that offer and perhaps pled guilty." Tr. 9. Defendant went on to testify that, if logistically possible, she would be willing to enter a guilty plea now if it resulted in a reduction in her sentence. Tr. 9.

---

[1] Defendant submitted a stipulation of expected testimony providing that Mr. Loggins, if called to testify, would say that while preparing defendant's appeal, he spoke with Carlton Bourne, the prosecutor, about the case. According to Mr. Loggins, Mr. Bourne expressed surprise that defendant had not "accepted the deal." Mr. Loggins has no clear idea of what the deal was, but he recalls that it involved an eighteen-month sentence. Mr. Loggins told defendant's brother about this alleged deal, who then told defendant. Mr. Loggins recalls that defendant was surprised to hear of any plea offer.

The government then called the prosecutor, Mr. Bourne, as its first witness. Mr. Bourne is currently the supervising attorney in the United States Attorney's office for the Southern District of Georgia in Augusta. Tr. 13. Before his current assignment, Mr. Bourne was an Assistant United States Attorney (AUSA) in the Charleston, South Carolina office. Tr. 14. Mr. Bourne and John Duane were the prosecutors assigned to defendant's case, with Mr. Bourne serving as the lead prosecutor. Tr. 14. Mr. Bourne began his testimony by describing the process for getting approval of plea offers when he worked in Charleston. According to Mr. Bourne, there was a policy in place that would have required him to submit written plea offers to two different supervisory levels—the narcotics section chief and the criminal division chief. Tr. 14. Further, Department of Justice policy required AUSAs to take a plea of guilty to the most readily provable serious count in the indictment. Tr. 15. Allowing a defendant to plead to a lesser count required supervisory approval along with a justification for permitting the defendant to do so. Tr. 15. Approval for such an exception was never "a sure thing." Tr. 15. Approvals for plea offers took "anywhere from one to several days." Tr. 19.

In defendant's case, Mr. Bourne never obtained approval to make a plea offer nor did he ever make an official plea offer. Tr. 15. Mr. Bourne did, however, discuss the *possibility* of a plea the day before or the day of jury selection when he approached Mr. Runyon and asked if defendant had any interest in pleading to the drug count. Tr. 16. Mr. Bourne was "trying to gauge interest" and told Mr. Runyon that he did not have approval for any offer. Tr. 16. Mr. Runyon was sitting at the table in the courtroom with defendant when he got up, came over to Mr. Bourne, and told him, "Not interested." Tr.

16. At no time did Mr. Bourne ever discuss any potential sentence, acceptance of responsibility, or any enhancements. Tr. 17.

During the pendency of defendant's appeal, Mr. Loggins called Mr. Bourne to talk about the case. Tr. 17. Mr. Bourne recalls commenting to Mr. Loggins that he couldn't "believe [defendant] wasn't interested in *exploring* a plea" because her sentence would have been less if a plea to the drug count could have ultimately been completed. Tr. 18. Mr. Bourne did not recall mentioning specific sentences in his conversation with Mr. Loggins. Tr. 21. Mr. Bourne emphasized at the hearing, however, that his overture to Mr. Runyon was "an exploratory question," and they never discussed a potential sentence. Tr. 18.

The government's next witness was Mr. Runyon. After reviewing the evidence in the case, Mr. Runyon surmised that defendant might be able to work out a plea to a cash transaction report violation because, in his estimation, they had an argument that "it was clean money." Tr. 22. Mr. Runyon thought that such a plea, if accepted, would involve minimal incarceration, perhaps even probation. Tr. 23. Mr. Runyon met with Mr. Bourne to discuss this possibility, but Mr. Bourne "was not exactly interested in considering that, but he gave me a perfunctory, well, I'll think about it." Tr. 23. That was the last Mr. Runyon heard from Mr. Bourne about this issue.[2] Tr. 23.

Mr. Runyon recalled that on the morning of jury selection, Mr. Bourne asked him

---

[2] Although Mr. Bourne does not recall having this meeting and discussion with Mr. Runyon, Mr. Bourne was confident that having defendant plead to a cash transaction report violation would never have been accepted. Tr. 20. "[T]hat plea would not have adequately explained her conduct in this case." Tr. 20.

if defendant would be interested in pleading to the drug count. Tr. 24. Mr. Runyon discussed the possibility briefly with defendant, and she said, "No."[3] Tr. 24. Mr. Runyon told Mr. Bourne that defendant was not interested in such a plea. Tr. 24. Mr. Bourne never sent Mr. Runyon a potential plea agreement, an e-mail, or anything else in writing indicating that the government would make an official offer of any kind. Tr. 24. At no time was there ever any discussion of an eighteen-month sentence. Tr. 31.

Defendant's current motion begins and ends with the fact that the government never offered defendant a plea deal. The uncontroverted testimony from the hearing established that Mr. Bourne's "exploratory" inquiry regarding a possible plea to the drug count was merely a preliminary discussion of a potential plea. The United States Attorney's office required written plea offers, plus two levels of supervisory approval. None of that occurred here. The testimony is consistent on this point: there was never a written offer of any kind. Moreover, Mr. Bourne never sought approval for a plea offer. He merely made an overture to Mr. Runyon in an attempt to gauge defendant's interest in trying to work out a plea.

Even assuming Mr. Runyon did not convey Mr. Bourne's overture to defendant, her motion still fails because she cannot meet the prejudice requirement under Strickland.[4] Defendant has not shown a reasonable probability that, but for counsel's

---

[3] Defendant testified that she and Mr. Runyon never discussed this overture by Mr. Bourne. Tr. 32. According to defendant, Mr. Runyon was running late to jury selection, and there was no time to discuss anything. Tr. 32. The first time she heard of this possible plea deal was from Mr. Loggins during her appeal. Tr. 33.

[4] The court assumes this issue without deciding it because resolving this case under the prejudice prong of Strickland is the most expeditious path to a decision. The

deficient performance, the proceeding would have had a different result. See Strickland, 466 U.S. at 694. This is so because she cannot establish that a plea offer, which she says she would have accepted, was ever made. The testimony from the hearing established that Mr. Bourne made a general overture of a possible plea to Mr. Runyon, not an offer that could be accepted on the spot. Even if further steps toward a plea agreement took place, these further steps constitute intervening acts that may or may not have led to an agreement. For example, after any preliminary discussions were held, any official offer would first have been required to be reduced to writing. Then, the written offer would have been required to be submitted to two levels of supervisory review. These further required steps underscore the fact that Mr. Bourne never made an offer of a plea deal to Mr. Runyon. With no offer ever having been made, defendant cannot show prejudice under Strickland.

---

court only assumes deficiency for purposes of resolving the case, and this assumption should not in any way be construed as a finding of deficient performance on the part of Mr. Runyon. Moreover, it is worth noting that the court only assumes that Mr. Runyon did not convey an *overture* of plea discussions to defendant. The court specifically finds that no offer was ever made.

## III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that defendant's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**March 1, 2010
Charleston, South Carolina**


**NOTICE OF RIGHT TO APPEAL**
The parties are hereby notified that any right to appeal this order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.